IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| DARYL FRANK SWARTZ<br>ELAINE RENEE SWARTZ, | : | CHAPTER 13 |
| Debtors | : | Case No. 1-bk-19-01790 |
| DARYL FRANK SWARTZ<br>ELAINE RENEE SWARTZ<br>ORRSTOWN PERSONAL CARE<br>HOME, INC., | : | |
| Movants | : | |
| DEPARTMENT OF THE TREASURY,<br>INTERNAL REVENUE SERVICE, | : | |
| Respondent | : | |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION OF THE DEBTORS AND ORRSTOWN PERSONAL CARE HOME, INC. TO THE PROOF OF CLAIM OF THE DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE**

On April 26, 2019, Daryl F. Swartz and Elaine R. Swartz (the "Debtors"), filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Bankruptcy Case"). The Debtors reside at 14146 Lower Horse Valley Road, Orrstown, Pennsylvania and own certain real property located at 3329 Orrstown Road, Orrstown, Pennsylvania (the "Real Property") upon which is located a 30 bed personal care home known as the Orrstown Personal Care Home, Inc. ("OPCH"). The Department of the Treasury, Internal Revenue Service (the "IRS") is an instrumentality of the Government of the United States of America. The IRS has filed a claim in the Bankruptcy Case asserting a right to certain taxes. However, the IRS Claim (as

hereafter defined) is largely barred by the doctrine of res judicata and must be reduced accordingly. This Memorandum of Law is filed in support of the Objection of the Debtors and Orrstown Personal Care Home, Inc. to the Proof of Claim of the Department of the Treasury, Internal Revenue Service (the "Objection"), which is filed simultaneously herewith.

## BACKGROUND

### I. General

OPCH is owned by Debtor Elaine R. Swartz who holds the position of President and manages it on a day-to-day basis. Debtor Daryl F. Swartz is an officer of OPCH, holding the position of Vice President. OPCH leases the Real Property upon which it operates from the Debtors. The Debtors' Third Amended Chapter 13 Plan was confirmed on March 12, 2020, as subsequently modified (the "Confirmed Plan"), most recently on May 19, 2022. The Debtors are current on all payments under the terms of the Confirmed Plan.

### II. Claim Of The Internal Revenue Service

On May 7, 2019, the IRS filed a Proof of Claim with the Bankruptcy Court, which was subsequently amended on May 21, 2019, September 26, 2019, and October 3, 2019 (the "IRS Claim"). The IRS Claim asserts a claim in the amount of $1,557,593.99, apportioned into an unsecured priority claim in the amount of $1,285,139.79 and an unsecured general claim in the amount of $272,454.20.

### III. Litigation Before The United States District Court

Prior to the filing of the Petition, on July 18, 2016, the IRS instituted an action against Elaine R. Swartz and OPCH by filing a Complaint in the United States District Court for the Middle District of Pennsylvania (the "Complaint"), which case was docketed to 1:16-CV-01465 and assigned to the Honorable Yvette Kane (the "District Court Litigation"). *See* Objection, Exh.

B (Complaint). The Complaint asserted, among other things, that Elaine R. Swartz failed to file employer withholding and unemployment taxes (Form 941 and 940) and failed to pay the resulting federal employment and unemployment taxes. In short, the IRS alleged that there were employment and unemployment tax liabilities from the ongoing business operations totaling $2,282,856 for the period January 1, 2006 through June 30, 2015. *See* Objection, Exh. B (Complaint) at 7. In calculating these employment and unemployment tax liabilities, the IRS also asserted that Elaine R. Swartz had not filed articles of incorporation for OPCH and, therefore, claimed that OPCH was "defendant Swartz's unincorporated sole proprietorship". *See* Objection, Exh. B (Complaint) at 4-5.

On August 19, 2016, a default was entered against the Defendants in the District Court Litigation. However, shortly thereafter, on October 14, 2016, CGA Law Firm was retained and a Motion for Consent Judgment and Order for Permanent Injunction was filed. On October 24, 2016, a Consent Judgment and Order for Permanent Injunction (the "Consent Judgment") was entered by Judge Kane. The Consent Judgment confirmed that "sole proprietorship named 'Orrstown Personal Care, Inc.' is the successor in interest to the corporation Orrstown Personal Care Home, Inc." *See* Objection, Exh. C (Consent Judgment) at 2.

Approximately nine months later, on July 18, 2017, Judge Kane, presumably due to the concerning lack of docket activity in the District Court Litigation, entered an Order directing the IRS as Plaintiff to show cause in writing not later than July 31, 2017 why the case should not be administratively closed. On July 31, 2017, the IRS responded, stating that the Defendants had not fully complied with the Consent Judgment and that the IRS would file a more complete response within three weeks. No response was filed by the IRS as promised during that three week period. Finally, on November 17, 2017, approximately three months late, the IRS filed a Status Report at

Case 1:19-bk-01790-HWV    Doc 150    Filed 04/19/23    Entered 04/19/23 13:44:22    Desc
Main Document    Page 3 of 12

the prompting of the Clerk of the District Court, again asking the District Court for an additional extension, in this instance an additional 30 days in order to file a more detailed motion describing the alleged failures and requesting appropriate sanctions.

On November 27, 2017, Judge Kane entered an Order granting the IRS request and ordering that the motion of the IRS must be filed on or before December 17, 2017, specifically stating that the "[f]ailure to comply with this Order will result in *dismissal*." (Emphasis added). Objection, Exh. G (November 2017 Order). Once again, the IRS failed to comply, this time with respect to the November 27, 2017 Order of Judge Kane. On December 18, 2017, the IRS filed an untimely Motion for Extension of Time asking for yet another extension to file a motion relative to the Consent Judgment.

On December 19, 2017, Judge Kane entered an Order dismissing the District Court Litigation and directing the Clerk to close the case (the "Dismissal Order"). In spite of the dismissal by the District Court, on December 22, 2017, the IRS filed a Motion for Order Directing Defendants to Show Cause why they should not be held in contempt. On December 28, 2017, the IRS filed a Memorandum in Support of Motion for Order Directing Defendants to Show Cause. After ignoring these filings by the IRS for about seven months, on July 24, 2018, Judge Kane issued an Order reciting the history of the failures by the IRS to comply with the Court's prior Orders and generally discussed the issue of contempt, directing Defendants to show cause why contempt should not be entered. On July 31, 2018, Defendants timely filed a Response stating that, among other things, they should not be held in contempt. There has been no activity in the U.S. District Court case since the July 31, 2018 filing of the Defendant's Response, no order has been entered, and no further action has been taken by either party or Judge Kane in the U.S. District

Court case. Moreover, the docket in the District Court Litigation states "Date Terminated: 12/19/2017" and "Closed." *See* Objection, Exh. K (District Court Docket) at 1.

## ARGUMENT

Having repeatedly failed to exercise the proper diligence in responding to multiple orders issued by Judge Kane, the IRS is now attempting to get another bite at the apple. This they cannot do. Under well-recognized principles of res judicata, the December 19, 2017 Dismissal Order bars the IRS from recovering the vast majority of the amounts asserted in the IRS Claim. Specifically, the IRS Claim should be reduced by the amount of any taxes or other amounts assessed for the period January 1, 2006 through June 30, 2015, the period covered by the Complaint, on the basis of res judicata.

Under res judicata, a final judgment on the merits bars further claims by parties based on the same cause of action. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S. Ct. 2205, 2209 (1979); *Davis v. Wells Fargo*, 824 F.3d 333, 342 (3d Cir. 2016). Res judicata benefits the parties and the courts because it "encourages reliance on judicial decisions, bars vexatious litigation, and frees the court to resolve other disputes." *See Brown*, 442 U.S. at 131, 99 S. Ct. at 2209 *citing Montana v. United States,* 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979). *See also Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 60 S. Ct. 317, 320 (1940). The elements of res judicata are that (a) there must have been a final judgment on the merits; (b) the decision was rendered by a court of competent jurisdiction; (c) the prior action must have involved the same parties or their privies; and (d) the prior action must have involved the same claim. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238-39 (11th Cir. 1999). *See also United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009) *quoting EEOC v. United States Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990).

25298187v1                                     5

Case 1:19-bk-01790-HWV    Doc 150    Filed 04/19/23    Entered 04/19/23 13:44:22    Desc
                          Main Document    Page 5 of 12

There is no question that the December 19, 2017 Dismissal Order by the United States District Court for the Middle District of Pennsylvania, Harrisburg Division, was rendered by a court of competent jurisdiction, thus satisfying one of the four elements. In fact, the United States Bankruptcy Court for the Middle District of Pennsylvania, Harrisburg Division, is part of the very same United States District Court for the Middle District of Pennsylvania. Similarly, the District Court Litigation involved the same parties, thus satisfying a second element. Elaine R. Swartz and OPCH were named Defendants and Daryl F. Swartz was an officer of OPCH as well as a co-owner of the Real Property on which OPCH operates. The Consent Judgment also held that OPCH was Ms. Swartz's "sole proprietorship [,]" thus assigning its tax liabilities for the years in question to Ms. Swartz. Objection, Exh. C (Consent Judgment) at 2.

In addition, the prior action involved the same claims. To determine whether the causes of action are the same, a court must compare the substance of the actions, not their form. *Rubbermaid*, 193 F.3d at 1239 *citing Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990). For purposes of res judicata, if the later case arises out of the same "nucleus of operative facts" or is based upon the same factual predicate as the former action, then the two cases are really the same claim or cause of action. *Id.* The IRS itself asserted in the Complaint that there were employment and unemployment tax liabilities from the ongoing business operations of Elaine Swartz's "sole proprietorship [,]" OPCH, totaling $2,282,856 covering the period January 1, 2006 through June 30, 2015, liabilities which almost completely parallel those claims of the IRS listed in the IRS Claim. *See* Objection, Exh. B (Complaint) and Objection, Exh. C (Consent Judgment). As a result, three of the four elements are satisfied.

Without question, the final element of res judicata, namely a final judgment on the merits, is present as well. As an initial matter relative to this prong of res judicata, a consent agreement
25298187v1

6

There is no question that the December 19, 2017 Dismissal Order by the United States District Court for the Middle District of Pennsylvania, Harrisburg Division, was rendered by a court of competent jurisdiction, thus satisfying one of the four elements. In fact, the United States Bankruptcy Court for the Middle District of Pennsylvania, Harrisburg Division, is part of the very same United States District Court for the Middle District of Pennsylvania. Similarly, the District Court Litigation involved the same parties, thus satisfying a second element. Elaine R. Swartz and OPCH were named Defendants and Daryl F. Swartz was an officer of OPCH as well as a co-owner of the Real Property on which OPCH operates. The Consent Judgment also held that OPCH was Ms. Swartz's "sole proprietorship [,]" thus assigning its tax liabilities for the years in question to Ms. Swartz. Objection, Exh. C (Consent Judgment) at 2.

In addition, the prior action involved the same claims. To determine whether the causes of action are the same, a court must compare the substance of the actions, not their form. *Rubbermaid*, 193 F.3d at 1239 *citing Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990). For purposes of res judicata, if the later case arises out of the same "nucleus of operative facts" or is based upon the same factual predicate as the former action, then the two cases are really the same claim or cause of action. *Id.* The IRS itself asserted in the Complaint that there were employment and unemployment tax liabilities from the ongoing business operations of Elaine Swartz's "sole proprietorship [,]" OPCH, totaling $2,282,856 covering the period January 1, 2006 through June 30, 2015, liabilities which almost completely parallel those claims of the IRS listed in the IRS Claim. *See* Objection, Exh. B (Complaint) and Objection, Exh. C (Consent Judgment). As a result, three of the four elements are satisfied.

Without question, the final element of res judicata, namely a final judgment on the merits, is present as well. As an initial matter relative to this prong of res judicata, a consent agreement

determining a tax liability is "a judgment on the merits for purposes of res judicata, 'whether or not the basis of the agreements on which [it] rests reached the merits.'" *Baptiste v. Commissioner*, 29 F.3d 1533, 1539-40 (11th Cir. 1994) (*quoting* United *States v. Int'l. Bldg.*, 345 U.S. 502, 506, 73 S. Ct. 807, 809 (1953)). *See also Commissioner v. Sunnen*, 333 U.S. 591, 598 (1948); *United States v. Rocky Mt. Holdings, Inc.*, 782 F. Supp 2d 106, 126 (E.D. Pa. 2011). In a bankruptcy action, "[w]hen a proof of claim is based on a cause of action that would be barred by res judicata, that claim is unenforceable and should be disallowed." *In re Woodbridge Group of Cos., LLC*, 2019 Bankr. LEXIS 408, at *5 (Bankr. D. Del. Feb. 14, 2019) *citing In re Residential Capital, LLC*, 2016 Bankr. LEXIS 3130 (Bankr. S. D. N.Y. Aug. 25, 2016). *See also Abrams v. AMC Liquidating Trust,* 303 B.R. 32, 33-35 (Bankr. D. Del. 2003) (finding that a "proof of claim was barred by the res judicata effect of [a judicially approved] settlement agreement.")

Federal Rule of Civil Procedure 41(b) now comes into play. Federal Rule of Civil Procedure 41(b), incorporated into the Federal Rules of Bankruptcy Procedure as Rule 7041, applies in contested matters pursuant to Federal Rule of Bankruptcy Procedure 9014(c). Significantly, Federal Rule of Civil Procedure 41(b) addresses involuntary dismissals and the effect of such a dismissal, stating that:

> "[i]f the plaintiff fails to prosecute or comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. *Unless the dismissal order states otherwise,* a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or a failure to join a party under Rule 19 – *operates as an adjudication on the merits.*"

Fed. R. Civ. P. 41(b) (Emphasis added). The Third Circuit interprets this language to be "broad enough to authorize [sua sponte dismissals by the court] on the same basis as it authorizes dismissals upon motion of the defendant." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 340-41 (3d Cir. 1982).

In the District Court Litigation, the IRS repeatedly failed to comply with Judge Kane's Orders to such an extent that the Judge herself highlighted those failures and entered the Dismissal Order sua sponte as a result. A sua sponte dismissal by a court will be treated as an involuntary dismissal with prejudice that "operates as an adjudication on the merits" under Federal Rule 41(b) which is "one of the prongs necessary for the doctrine of res judicata to be applicable." *McGrail v. Erica's Auto Mart* (*In re McGrail*), 2009 Bankr. LEXIS 5546, at *8 (Bankr. W.D. Pa. April 8, 2009).[1] Indeed, involuntary dismissals are presumptively with prejudice. *See Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 610 (3d Cir. 2020). And nothing in the Dismissal Order stated that it was *not a decision on the merits* as required by Federal Rule of Civil Procedure 41(b) to avoid any claim preclusive effect.

In fact, Judge Kane's own words in the Dismissal Order are the best indication that an involuntary dismissal of the District Court Litigation occurred. The December 19, 2017 Dismissal Order plainly states ". . . IT IS ORDERED that the *above-captioned action* is DISMISSED." (Emphasis added). *See* Objection, Exh. I (Dismissal Order).

The United States Supreme Court's decision in *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) also militates in favor of such an outcome. In *Semtek*, the Supreme Court, addressed the scope of Federal Rule of Civil Procedure 41(b) and held that the phrase "operates as an adjudication on the merits" in Federal Rule of Civil Procedure 41(b) precludes re-litigation of the same action in the same federal district court. As noted above, in the instant case, the IRS, both in its prior District Court Litigation and the current Bankruptcy Case, finds itself before the same federal district court, namely the Middle District of Pennsylvania.

---

[1] *Accord Qadr v. Overmyer*, 642 F. App'x 100, 102 (3d Cir. 2016) (*per curiam*) ("Under Rule 41(b), a district court has authority to dismiss an action sua sponte if a litigant fails to prosecute or comply with a court order.") (*citing* Fed. R. Civ. P. 41(b)).

Even the IRS acknowledges the preclusive effect of the Dismissal Order. In its belated Motion for Extension of Time, the IRS pleaded with Judge Kane to grant its Motion because it would "prevent [ ] the United States from initiating a new case." *See* Objection, Exh. H (December 2017 IRS Motion for Extension) at 1. A mere administrative closing, as opposed to an actual dismissal as occurred here, would not have resulted in a final adjudication. *See Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 247 (3d Cir. 2013). In such circumstance, the District Court could have easily re-opened the case. However, Judge Kane's Order entered on November 27, 2017 was so unequivocal that the IRS recognized that dismissal would require them to commence a new case, something that they desired to avoid. The unmistakable consequences of the failure to comply with the November 27, 2017 Order could not have been made clearer to the IRS as that Order stated: ". . . IT IS ORDERED THAT [THE IRS] shall file said motion on or before December 17, 2017. *Failure to comply with this Order will result in dismissal.*" (Emphasis added) *See* Objection, Exh. G (November 2017 Order). Thus, ample warning of the repercussions for the IRS' serial non-compliance were given by Judge Kane. Even after the filing of the Petition in the Bankruptcy Case, the IRS effectively acknowledges that they dropped the ball in the District Court Litigation. Glaring by its omission, the IRS did not attach the Consent Judgment, or any other documentation from the District Court Litigation for that matter, to the IRS Claim as supporting documentation. And not just once. The IRS did not attach a single piece of paper from the District Court Litigation to the originally filed IRS Claim or in any of its *three* subsequent amendments.

Consequently for the various reasons described above, Judge Kane's Dismissal Order acts as an adjudication on the merits, thereby supplying the last remaining element needed for res judicata to apply. The Dismissal Order vacated the Consent Judgment since the Consent Judgment

was not carved out from the Dismissal Order. And, in the absence of the Consent Judgment, the Dismissal Order acts as an adjudication on the merits of the Complaint itself. Therefore, all claims present within the Complaint in the District Court Litigation, and the relief requested therein, are barred from presentment in future litigation by the doctrine of res judicata.

Addressing the practical application of res judicata to the instant matter, it should be noted that "each tax year represents a separate claim." *In re Blue Coal Corp.*, 166 B.R. 816, 822 (Bankr. M.D. Pa. 1993) *citing In re Hartman Material Handling Systems, Inc.*, 141 B.R. 802 810 (Bankr. S.D. N.Y. 1992). Thus, each year detailed in the IRS Claim must be treated as a separate and distinct claim. The IRS, in the IRS Claim, has filed a breakdown of the amounts owed by year which helpfully facilitates the analysis of the amounts subject to disallowance on the basis of res judicata. Accordingly, any tax claims covering the period detailed in the Complaint in the District Court Litigation are barred by res judicata, specifically any and all taxes and associated amounts for the period January 1, 2006 through June 30, 2015 (the "Covered Tax Period").

The IRS Claim itself is comprised of an unsecured priority claim and a general unsecured claim. While the Complaint asserted tax liabilities for the January 1, 2006 through June 30, 2015 period in the amount of $2,282,856, it appears from the IRS Claim as filed in the Bankruptcy Case that the actual amount during the Covered Tax Period totals $1,359,263.51 for taxes and interest to the date of the Petition plus approximately $11,257.25 for penalties.[2] However, as discussed, almost all of these amounts are subject to disallowance on the basis of res judicata.

---

[2] Please note that a precise calculation for the penalties is difficult because the Covered Tax Period comprising the period January 1, 2006 through June 30, 2015 differs from the period utilized by the IRS for purposes of the IRS Claim which is 2005 through the April 26, 2019 date of the filing of the Petition and the IRS Claim does not provide a breakdown of the penalty amount by year. Nevertheless, based on the ratio of amounts in the IRS Claim subject to res judicata to the amounts not subject to res judicata, approximately 87.26% of the penalty asserted by the IRS is subject to res judicata leaving 12.73% as the residual percentage which is not subject to res judicata. The total amount of penalties asserted in the IRS Claim is $88,361.41, yielding $11,257.25 as not subject to res judicata when the 12.73% residual percentage is applied.

Further, the IRS Claim asserts amounts outside of the Covered Tax Period, including an unsecured priority claim under Section 507(a)(8) of the Bankruptcy Code for taxes and interest for (a) 2005 in the amount of $21,840.81; and (b) after June 30, 2015 but prior to the filing of the Petition in the amount of $81,245.17. The aggregate amount is $103,085.98, which is the allowable amount of the unsecured priority claim. There is more. The IRS Claim asserts a general unsecured claim, for amounts outside of the Covered Tax Period, for taxes and interest for: (a) 2005 in the amount of $6,883.09; and (b) penalties comprised of $7,315.50 on the unsecured priority claims (including the interest thereon) and $81,045.91 on the unsecured general claim (including the interest thereon). Based upon the percentage ratios referenced above, the allowable penalties total $11,257.25, comprised as follows: $932.00 on the unsecured priority claims (including the interest thereon) and $10,325.25 on the unsecured general claim (including the interest thereon). When combined with the $6,883.09 referenced above, the allowable amount of the general unsecured claim yields $18,140.34. Accordingly, the amounts contained within the Covered Tax Period and subject to disallowance total $1,436,367.67 and the amounts outside of the Covered Tax Period total $121,226.32.

## CONCLUSION

The vast majority of the amounts sought by the IRS Claim are barred by the doctrine of res judicata and the IRS Claim must be reduced from $1,557,593.99 to $121,226.32, which is then apportioned into an unsecured priority claim in the amount of $103,085.98 and a non-priority general unsecured claim in the amount of $18,140.34.

Respectfully submitted,

CGA LAW FIRM, P.C.

By: _____
Lawrence V. Young, Esquire
135 North George Street
York, PA 17401
Tel.: 717-848-4900
Email: lyoung@cgalaw.com

Counsel for: the Debtors

and

POST & SCHELL, P.C.

By: _____
Brian W. Bisignani, Esquire
Sean C. Campbell, Esquire
17 North 2nd Street, 12th Floor
Harrisburg, PA 17101
Tel.: 717-612-6041
Email: bbisignani@postschell.com
scampbell@postschell.com

Counsel for: Orrstown Personal Care Home, Inc.