| | | |
|---|---|---|
| In re: | ) | Case No. 19-bk-1790-HWV |
| | ) | Chapter 13 |
| DARYL F. SWARTZ, *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| DARYL F. SWARTZ, *et al.*, | ) | |
| | ) | |
| Objectors, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DEPARTMENT OF THE TREASURY, | ) | |
| INTERNAL REVENUE SERVICE | ) | |
| | ) | |
| Claimant. | ) | |

**UNITED STATES' RESPONSE TO DEBTORS' POST-TRIAL BRIEF**

The Court should deny the debtors' objection to the Internal Revenue Service's proof of claim. (Dkt. No. 149). Their post-trial brief (Dkt. No. 190) provides no additional justification for the Court to grant the objection.

The District Court entered a final judgment in the form of the Consent Judgment. The debtors now assert that final judgment was not, in fact, final despite every indication to the contrary. Their new equitable argument – laches – is both untimely and invalid. Laches is not available against the United States. Finally, as explained below, this Court's decision in *Conrad* does not undermine the United States' own res judicata argument. The Court should therefore deny the Objection.

1

ARGUMENT

The Court should reject the debtors' responses to the questions it posed at oral argument. Contrary to their new arguments, the Consent Judgment was a valid, final judgment; it was not a "pre-trial order." Next, they offer no compelling explanation for how the Dismissal Order could have vacated the Consent Judgment or its reservation of rights. Third Circuit precedent strongly suggests it could not have done so. The debtors' new equitable argument should also be rejected, both because it is untimely and because it cannot be raised against the United States.

### I. The Consent Judgment was a Final Judgment

In their post-trial brief, the debtors make the novel—and spurious—contention that the Consent Judgment was not a final judgment—apparently implying that it could easily be voided by the Dismissal Order. Having failed to raise this argument in their opening brief, they have waived it, and it should be rejected out of hand. *Ross v. Comm'r of Soc. Sec.*, No. CV 19-8909 (SRC), 2020 WL 4282746, at *1 (D.N.J. July 27, 2020) (citing *Anspach v. City of Philadelphia*, 503 F.3d 256, 259 (3d Cir. 2007) ("failure to raise an argument in one's opening brief waives it.")). The argument is also refuted by an express finding in the Consent Order, which it must be remembered was signed by debtors' current counsel. (Consent Judgment, ¶ 6 ("The United States and Defendants agree that the entry of this permanent injunction constitutes a final judgment in this case….")). Finally, while the Consent Judgment may not have resolved all "issues" mentioned in the complaint, it did resolve the one and only *claim* brought in the action. The Consent Judgment thus was a final judgment that could only be voided through express action by the District Court—namely an order granting the defendants' request for relief from the Consent Judgment. The District Court took no such action.

## II. The Dismissal Order did not Vacate the Consent Judgment

When Judge Kane entered the Dismissal Order, she did not vacate or otherwise invalidate the Consent Judgment and its reservation of the United States' right later collect the debtors' outstanding tax liabilities.

The Third Circuit's decision in *Knoll v. City of Allentown* is instructive. 707 F.3d 406 (3d Cir. 2013). In *Poulis v. State Farm Fire and Casualty Co.*, the Court of Appeals set forth a six-factor test for dismissal as a sanction before trial. 747 F.2d 863 (3d Cir 1984). The test was intentionally demanding because "dismissals with prejudice [pursuant to F.R.C.P. 41(b)] … are drastic sanctions." *Knoll*, at 409. The question in *Knoll* was whether the *Poulis* test applied in the post-trial context—specifically, to a dismissal of a motion for a new trial. *Knoll*, at 408.

The Third Circuit held that the heightened *Poulis* standard did not apply in the "post-trial context." *Id.* at 410. It explained that:

> [t]he concern animating Poulis—that dismissal will deprive a party of her day in court and preclude review of potentially meritorious claims—does not apply in the post-trial context. After all, the parties have already received an adjudication on the merits. Furthermore, although we acknowledge that, for instance, a dismissal of a motion for a new trial due to noncompliance with a procedural rule may deprive a party of an adjudication of that particular motion before the district court, it does not deprive that party of further review of the claims of error presented in such a motion. Those claims, so long as they have been properly raised and preserved, would be ripe for review on appeal to our Court.

*Id.* If the dismissal of a post-trial proceeding for a new trial automatically vacated the prior adjudication on the merits, the "concerns animating *Poulis*" would be present. Additionally, the party seeking a new trial would not still have the right to further review of the underlying judgment since it would be void. The Third Circuit's rationale thus requires that the dismissal of post-trial proceedings pursuant to Rule 41(b) does not vacate the underlying judgment.

Even if Judge Kane could have vacated the Consent Judgment via the Dismissal Order, her failure to rule regarding her order to show cause does not indicate she believed she had done

3

so. The language of the order to show cause repeatedly indicates that she believed the Consent Judgment was still valid. Several times she describes its binding terms in the present tense. (Dkt. 163-001, Ex. E, pp. 1-2). More importantly, she stated that an element of contempt is "that a valid order of the court existed" at the time the alleged contumacious activity occurred and then gave the defendants an opportunity to challenge the United States' arguments for contempt. (*Id.* at 4-5). If she believed the Dismissal Order had voided the Consent Judgment, there would have been no reason to engage in that exercise. This Court should therefore reject the debtors' argument, for which they offer no legal support, that Judge Kane's failure to rule shows she believed the Dismissal Order voided the Consent Judgment.

### III. The Court should Reject the Debtors' New Equitable Argument

The debtor's new equitable argument—that the Court must disallow the IRS's claim as punishment for the Department of Justice's inaction in the District Court—is similarly at odds with Third Circuit law as well as long established Supreme Court precedent. It essentially amounts to a defense of laches, which is not available against the United States. *United States v. Tuerk*, 317 F. App'x 251, 253 (3d Cir. 2009) (citing *United States v. Summerlin*, 310 U.S. 414, 416 (1940) and *United States v. St. John's General Hosp.*, 875 F.2d 1064, 1071 (3d Cir.1989) ("It is well established that the United States is not subject to the defense of laches in enforcing its rights.")). The Court thus must reject this argument.

Nor is there anything inequitable about failing to penalize the United States for its omissions in the prior action. "[T]his maxim [that laches does not apply to the government] is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the

4

public from the most serious losses, if the doctrine of laches can be applied to its transactions." *United States v. Kirkpatrick*, 22 U.S. 720, 735 (1824). Put more succinctly, "[t]he real ground is a great principle of public policy … that the public interest should not be prejudiced by the negligence of public officers, to whose care they are confided." *United States v. Knight*, 39 U.S. 301, 315 (1840). This rule benefits all citizens, even the debtors. *See Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 132 (1938).

Indeed, to the extent equitable considerations are relevant, they militate against granting the debtors' objection. The debtors have never disputed the merits of the IRS's claims. Implicitly, they admit that Mrs. Swartz and her business failed to withhold and pay over more than a million dollars of their employees' employment and income taxes. Doing so deprived the United States Treasury of those funds even as it is still committed to paying those employees' future Social Security and Medicare benefits. Nothing the Department of Justice did or failed to do in the District Court action justifies absolving Mrs. Swartz from her obligation to make the Treasury whole. The Court should therefore reject the debtors' equitable arguments.

---

Based on the foregoing, the Court should reject the debtors' arguments that the IRS's claims are barred by res judicata. Nor should the Court direct the parties to return to the District Court for a clarification from Judge Kane on the effect of the Dismissal Order. It plainly did not, and probably could not, void the Consent Judgment. Moreover, even if she ruled for the debtors, this Court would still have to address the United States' own res judicata arguments. The debtors have delayed paying the IRS long enough. This Court should rule on their objection, and to the extent the United States prevails, compel them to finally pay their debts—which it must again be pointed out, they do not contest on the merits.

### IV. Res Judicata Bars Relitigation of the IRS's Priority Claims

Even if the Court agrees with the debtors' res judicata arguments, it should still deny their objection based on the United States' own res judicata defense. The United States reasserts its prior res judicata arguments now and incorporates them into this brief. Undersigned counsel writes now only to address this Court's decision in *In re Conrad*, which discussed the res judicata effect of a chapter 13 plan on a proposed plan modification pursuant to 11 U.S.C. § 1329. 604 B.R. 163 (Bankr. M.D. Pa. 2019).

In *Conrad*, this Court held that while 11 U.S.C. § 1327 may require application of traditional res judicata principles when a party attempts a collateral attack on a confirmed plan, it does not extend them to otherwise proper requests to modify a plan pursuant to § 1329. 604 B.R. at 172. Specifically, this Court rejected the contention that the party seeking to modify a plan must show a substantial change in circumstances following confirmation of the original plan. *Id.* at 170. This Court reasoned that a contrary holding would: (1) violate the harmonious reading canon; (2) be inconsistent with the requirement to follow the plain meaning of statutes; and (3) ignore the rule that res judicata principals do not apply when a contrary statutory purpose is evident. *Id.* at 172-174.

The Debtors are not seeking a valid modification of their plan; thus *Conrad* does not apply because § 1329 is not implicated. Instead, they are attempting a collateral attack on their own plan based entirely on pre-confirmation events—the United States filing of the Complaint in the District Court action and Judge Kane's dismissal of that action after entry of the Consent Judgment. That is exactly the kind of maneuver which this Court recognized arguably can be barred traditional res judicata principles, though the Court was skeptical of other courts' reasoning for doing so. *Id.* at 170-172. *Conrad* thus does not expressly bar the United States'

6

position in this case, and further analysis shows that its position is consistent with the statutory maxims on which this Court relied.

In *Conrad*, this Court began by looking to the "harmonious reading canon." *Id*. at 172. That canon holds that "the provisions of a statute should be interpreted in a way that renders them compatible, not contradictory." *Id.* (citing, inter alia, *United States v. Bass*, 404 U.S. 336, 344 (1971) ("[C]ourts should interpret a statute with an eye to the surrounding statutory landscape and an ear for harmonizing potentially discordant provisions.") and *In re Glenn*, 900 F.3d 187, 190 (5th Cir. 2018) ("[I]t is a cardinal rule that a statute is to be read as a whole, in order not to render portions of it inconsistent or devoid of meaning." (internal quotation omitted))). The Court concluded that interpreting § 1327 to include all traditional res judicata principles, including the requirement of a showing of changed circumstances, creates an unnecessary conflict with § 1329 and potentially renders § 1329 meaningless in many cases in which it should be available.

Interpreting § 1327 to bar post-confirmation claim objections does not violate the harmonious reading canon. Res judicata is a problem in the modification context since section 1329 motions by their very nature can only be brought post-confirmation. Claim objections and Rule 3012 motions, however, can be brought as soon as a priority or secured claim is filed or a debtor even suspects one might be. If a claim is not filed and could not reasonably be anticipated before confirmation, res judicata principles should not prevent it from later being litigated. Barring post-confirmation objections to filed or reasonably predictable secured/priority tax claims thus does not create a meaningful conflict since § 502 is still fully available to debtors at some point.

7

In *Conrad*, this Court also concluded that applying traditional res judicata principles to plan modification motions violated the requirement to read provisions according to their plain meaning. *Conrad*, at 173. It noted that "'courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete.'" *Id.* (quoting *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal citations and quotations omitted)). This Court believed that prior courts had effectively read into § 1327 an extension of its binding effect to issues that *were not but could have been litigated* at confirmation and then had to read into § 1329 a threshold requirement of a showing of changed circumstances. According to *Conrad*, those interpretations go beyond what the plain language of those provisions can possibly permit.

The United States' position here does not violate the plain meaning canon. First, "[t]he Third Circuit has repeatedly held that a confirmation order is res judicata as to all issues decided *or which could have been decided* at the hearing on confirmation, pursuant to § 1327." *In re Fraser*, 599 B.R. 830, 834 (Bankr. W.D. Pa. 2019) (emphasis added) (citing *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989); *Zardinovsky v. Arctic Glacier Income Fund (In re Arctic Glacier Int'l, Inc.)*, 901 F.3d 162, 166 (3d Cir. 2018); and *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997)). *Accord In re Szczyporski*, 34 F.4th 179, 188 (3d Cir. 2022) (citing *Szostek* and § 1327). It has also held that a plan confirmation order is entitled to res judicata effect by virtue of being a final order, presumably not just due to § 1327 or 1141. *See Arctic Glacier*, 901 F.3d at 166 ("When a bankruptcy court enters a confirmation order, it renders a final judgment. That judgment, like any other judgment, is res judicata. Id. It bars all challenges to the plan that could have been raised." (internal citation omitted)). Thus, under Third Circuit law, the United States'

interpretation of § 1327 is valid even if that provision does not specifically address issues not raised at confirmation. The Third Circuit has interpreted it that way, and common law res judicata principles apply independently because a confirmation order is a final court order.

Nor is the United States' position contrary to the plain meaning of § 502. Critics of the United States' position contend that it reads into § 502 a deadline for claim objections when Congress could have, but did not, provide for one. *See e.g.*, *In re Morton*, 298 B.R. 301, 309-310 (B.A.P. 6th Cir. 2003). That's not quite right. The United States is not inserting a deadline; it is just assuming that the doctrine of res judicata applies. By its very nature, res judicata (whether arising from the common law or a statute) bars claims that are otherwise timely under the source of law that created them. If res judicata did not apply to claims that are not time-barred under applicable law, it would serve no purpose, since the only claims it would preclude would already have to be denied on timeliness grounds. Indeed, refusing to assume that res judicata applies to § 502 objections would violate the presumption against surplusage (as to § 1327) and the presumption—noted by the Court in *Conrad*—that statutes incorporate preclusion purposes unless Congress indicates a contrary intent. *Astoria Fed. Sav. And Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).[1]

---

[1] It is worth noting that courts, including the Third Circuit, have held confirmation orders bar the exercise of other rights arising under Chapter 5 for which the Code provides no express deadline. *E.g. United States v. Cont'l Airlines (In re Cont'l Airlines)*, 134 F.3d 536, 542 (3d Cir. 1998), *as amended* (Mar. 23, 1998) ("[T]he right of a creditor to set-off in a bankruptcy reorganization proceeding [pursuant to § 553] must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim."); *United States v. Norton (In re Norton)*, 717 F.2d 767 (3d Cir. 1983) (same result in chapter 13); *In re Layo*, 460 F.3d 289, 295–96 (2d Cir. 2006) (action to avoid lien pursuant to § 544(a)(3) barred by § 1327); *In re Woltman*, No. 1:07-BK-01647MDF, 2008 WL 5157477, at *2 (Bankr. M.D. Pa. Nov. 18, 2008) (motion to avoid lien under § 522(f) barred by § 1327(a)).

This Court in *Conrad* found the latter presumption did not apply to § 1329 motions, but for the reasons given above, that conclusion should not extend to this case. Again, by its very nature, plan modifications must occur post-confirmation. By enacting § 1329, Congress clearly evinced its intent to allow them. If traditional res judicata principles will often (if nor usually) prevent modification, their application would therefore be contrary to clear Congressional intent. But while § 502 does not create a deadline to file claim objections, it contains no provision clearly indicating an intent to permit debtors to file them post-confirmation.[2]

Moreover, nothing in either § 502 or § 1327 stops a debtor from: (1) objecting to a filed claim prior to confirmation; (2) requesting preconfirmation that the court determine the amount of any unfiled tax claims pursuant to § 505 and F.R.B.P. 3012; or (3) reserving the right to object to claims post-confirmation. Thus, neither § 502's general inclusion in the Code nor any of its specific provisions create an evident statutory purpose that contradicts § 1327's application of res judicata principles. The Court should therefore presume that § 502 incorporates traditional res judicata principles and bars post-confirmation claim objections—at least as to claims that were filed before confirmation and addressed in the plan.

For the above reasons, this Court's holding and rationale in *Conrad* do not apply to the facts of this case. To the extent the Court agrees with the debtors' position that the IRS's claims are precluded by res judicata, it should nonetheless deny their objection as itself barred by the same doctrine.

//

---

[2] Indeed, to hold to the contrary could reward debtors for subterfuge. A debtor could treat a claim as undisputed and even amend their plan to apparently accommodate the claim in full, only to change their mind after the plan is confirmed and binding on all parties.

DATE: March 20, 2024

                                       Respectfully submitted,

                                       DAVID A. HUBBERT
                                       Deputy Assistant Attorney General

                                     /s/ Ward W. Benson
                                     WARD W. BENSON
                                     Trial Attorney, Tax Division
                                     U.S. Department of Justice
                                     P.O. Box 227, Ben Franklin Station
                                     Washington, DC 20044
                                     Tel: (202) 514-9642
                                     Fax: (202) 514-6866
                                     Email: ward.w.benson@usdoj.gov

# CERTIFICATE OF SERVICE

I certify that the foregoing POST-TRIAL BRIEF was filed with the Clerk of the Court on March 20, 2024, using the CM/ECF system, which will send notification of such filing to all parties appearing in said system, including:

Jack N. Zaharopoulos
*Chapter 13 Trustee*

and

Brian W. Bisignani
*Counsel to Orrstown Personal Care Home, Inc.*

and

Lawrence V. Young
*Counsel to Debtors*

/s/ Ward W. Benson
WARD W. BENSON